**VANGUARD MUNICIPAL BOND FUND, INC., et al., Plaintiffs,**

v.

**THOMSON PUBLISHING CORPORATION, et al., Defendants.**

No. 97 C 3331.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 25, 1997.

**1160**

Scott Gene Early, Thomas Paul Krebs, John R. Landis, Foley & Lardner, Chicago, IL, Michael D. O'Mara, Lee A. Rosengard, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for plaintiffs.

Stephen Todd Bobo, Jeffrey Hoke Bergman, D'Ancona & Pflaum, Chicago, IL, James J. Coster, James F. Rittinger, Satterlee, Stephens, Burke & Burke, New York City, for Thomson Pub. Corp., Cantor, Fitzgerald L.P., J.F. Hartfield & Co., Inc., Municipal Partners, Inc., Titus & Donnelly, Inc.

Stephen Todd Bobo, Jeffrey Hoke Bergman, D'Ancona & Pflaum, Chicago, IL, Chester A. Lizak, Alan L. Stefaniak, DiMonte, Schostok & Lizak, Park Ridge, IL, James J. Coster, James F. Rittinger, Satterlee, Stephens, Burke & Burke, New York City, for Chapdelaine & Co., Inc.

Bradford P. Lyerla, John Fee Ward, Jenner & Block, Chicago, IL, Stephen Todd Bobo, Jeffrey Hoke Bergman, D'Ancona & Pflaum, Chicago, IL, James J. Coster, James F. Rittinger, Satterlee, Stephens, Burke & Burke, New York City, for J.J. Kenny Drake, Inc.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the court on Defendants' motion to transfer this matter to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

Motion granted.

This matter is transferred to the U.S. District Court for the Southern District of New York.

## I. BACKGROUND

Plaintiffs (collectively referred to as "Vanguard") are seven investment companies. Defendants are seven corporations engaged, generally speaking, in the bond business. One of the defendants—Thomson Publishing Corporation ("Thomson")—is a publishing company which publishes *The Bond Buyer;* the other six defendants (collectively referred to as "brokers") are dealer-to-dealer municipal bond brokers.

The Chicago Board of Trade ("CBOT") trades municipal bond index futures contracts. The price at which the municipal bond index futures contracts settle is established by referring to the Bond Buyer Municipal Bond Index ("BBI"), which is constructed by *The Bond Buyer* in accordance with criteria established by CBOT regulations. The BBI is comprised of 40 term municipal bonds.

The defendant brokers broker the type of bonds which comprise the BBI. They evaluate the price of each bond twice a day so that *The Bond Buyer* may compute the BBI. If the BBI fails to reflect the prevailing market conditions and is not accurate, participants trading municipal bond index futures contracts are exposed to windfall losses or gains.

Vanguard purchased certain December 1995 Municipal Bond Index Futures Contracts ("December contracts"); Vanguard purchased a total of 3,420 December contracts. On December 19, 1995,—the day the December contracts expired—at approximately 2:15 p.m. eastern time, the Federal Reserve Board moved to lower short term interest rates and conducted open market operations to drive the Federal Funds Rate down by 25 basis points. Consequently, the price of the Treasury Bond and Municipal Bond Index futures, other than the December contracts, rose between 1 and 1.5 points.

The afternoon pricing of the BBI did not reflect the Federal Reserve Board's actions or the changes in price of other index futures and actively traded fixed income securities. The BBI did not catch up with the bond market until the following day. As a result, when the December contracts expired, the settlement price on the 3,420 December contracts held by Vanguard was allegedly inaccurate. If the settlement price was accurate, Vanguard alleges that it would have received

approximately $3,250,000 more than it actually received on the settlement date.

Vanguard brings a six-count complaint against Thomson and the brokers: count I—breach of contract against Thomson; count II—breach of contract against the brokers; count III—negligent misrepresentation against Thomson; count IV—negligent misrepresentation against the brokers; count V—a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act against Thomson; and count VI—a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act against the brokers.

Thomson and the brokers seek to transfer this matter to New York.

## II.  DISCUSSION

■ Pursuant to 28 U.S.C. § 1404(a): For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A transfer under § 1404(a) is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice. *Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D.Ill.1995). The party requesting the transfer "has the burden of establishing . . . that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir.1986). And, as one may have expected, "[t]he weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Id.* at 219.

### A.  Venue

Both parties agree that venue is proper in the Northern District of Illinois (the transferor court), *see* 28 U.S.C. § 1391, and the Southern District of New York (the transferee court), *see* 28 U.S.C. § 1391. The court agrees with the parties.

### B.  Convenience of Parties and Witnesses

■ When evaluating the convenience of the parties and witnesses, the court considers: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience to the parties of litigating in the respective forums. *College Craft Co. Ltd. v. Perry,* 889 F.Supp. 1052, 1054 (N.D.Ill.1995).

### 1.  Plaintiff's choice of forum & site of material events

■ Plaintiffs chose the Northern District of Illinois to litigate this matter. The plaintiff's choice of forum is generally granted substantial weight, *Dunn v. Soo Line R.R. Co.,* 864 F.Supp. 64, 65 (N.D.Ill.1994), particularly when the plaintiff resides in the chosen forum and the conduct and events giving rise to the cause of action took place in the selected forum. *See id.; Kingsley v. Dixon Old People's Home Fund, Inc.,* No. 96 C 2464, WL 417548 *1 (N.D.Ill. July 22, 1996).

■ Here, three of the Vanguard investment companies are Maryland corporations with their principal place of business in Pennsylvania; the other four are Pennsylvania corporations with their principal place of business in Pennsylvania. Thus, none of the plaintiffs are citizens or residents of Illinois.

The parties dispute the location of the material events giving rise to this action. Vanguard claims that because the December contracts are traded only in Chicago, Chicago is the site of material events. Thomson and the brokers argue, however, that the events underlying this action did not occur in Chicago merely because the December contracts were traded here. Rather, any improper conduct on their part occurred in their respective offices; if they were negligent, engaged in fraudulent conduct, or breached a contract, certainly, the conduct underlying such allegations occurred in their respective locations of business.

The court is inclined to agree with Thomson and the brokers. To say that the conduct and events underlying Vanguard's complaint arose in Chicago merely because the December contracts were traded here is simply not accurate and would be ignoring the reality of the situation. The conduct and events giving rise to this action occurred where Thomson and the respective brokers

are located—that is where the decisions were made regarding the pricing of the bonds that Vanguard alleges resulted in a breach of contract and amounted to negligence and/or fraud.

Accordingly, because Vanguard is not a citizen of Illinois and the conduct and events underlying this action did not really occur in Illinois, Vanguard's decision to institute this action is this forum is accorded virtually no weight. The fact that the conduct and events giving rise to this action occurred primarily in New York and the surrounding area[1] militates in favor of transferring this matter. Indeed, other than the fact that the December contracts were traded on the CBOT, this case has no connection to Illinois.

### 2. Availability of evidence in each forum

Regarding the availability of evidence in each forum, the court finds that this factor weighs heavily in favor of transferring this matter to New York. As noted above, the conduct and events giving rise to this action occurred at the offices of Thomson and the brokers, located almost exclusively in the New York area. Thus, that is where most of the pertinent witnesses are located. Vanguard argues that CBOT officials and employees will be called to testify at trial. The court does not doubt that,[2] but the court believes in a case of this nature—particularly with negligence and fraud alleged—the bulk of the witnesses will come from the brokers offices, located in New York.

### 3. Convenience of the parties

Regarding the final factor—the convenience of the parties of litigating in the respective forum—the court finds that this factor weighs in favor of transferring this matter to New York. As noted, all of the brokers are located in New York and one just across the river in New Jersey. All of the plaintiffs have their principal place of business in Pennsylvania—it's more convenient for the plaintiffs to get to New York than to Chicago.

### C. *Interests of Justice*

The "interests of justice" component concerns the "efficient administration of the court system." *Coffey,* 796 F.2d at 221. It includes such considerations as the speed at which the case will proceed to trial,[3] the court's familiarity with applicable law, and the public interest in having a case resolved in a particular forum. *Id.; see Reinke v. Boden,* No. 92 C 744, 1996 WL 467240, *1 (N.D.Ill. Aug. 13, 1996).

Regarding the public interest, the court finds that New York has a greater interest in deciding this matter than Illinois. As discussed, the conduct and events underlying this action occurred almost exclusively in the brokers' office in New York. Certainly, Illinois has an interest in matters involving transactions on the CBOT. But, because the conduct of businesses operating out of New York is at the heart of this matter, the court finds that New York has a greater public interest in resolving this matter than Illinois.

The parties dispute whether Illinois or New York law applies to this action. Because of the *extensive* contacts this matter has with New York, the court declines to address the issue.

The court notes, however, that Illinois follows the Restatement (Second) of Conflicts of

---

1. Five of the seven defendants are New York corporations with their principal place of business in New York. One defendant is a New York corporation with its principal place of business across the river in New Jersey. One defendant—Thomson—is a Delaware corporation with its principal place of business in California.

2. Vanguard does not identify any of the CBOT officials and employees it anticipates to call. It does identify such individuals by their responsibility at the CBOT—such as the employee responsible for communication with *The Bond Buyer;* the employee responsible for the communication of the settlement price, etc. For all the court

knows, however, the seven responsibilities identified may involve only two or three employees at the CBOT. Vanguard says it could be as many as twenty individuals, but fails to identify such individuals. The court envisions the testimony of many more witnesses from the brokers at trial. Moreover, there is no indication that the CBOT officials would not travel to New York for trial. In fact, a CBOT official says in an affidavit that if a trial is necessary, the relevant employees will be available to travel to New York for trial.

3. The court finds this element is a wash—the court knows that both locations have a significant docket of pending cases.

Law when determining choice-of-law issues. *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir.1996). The Restatement applies the law of the state with the "most significant contacts." *Id.* Because the only connection Illinois has with this matter is that the December contracts were traded here, the court is highly skeptical as to whether Illinois law applies. After considering the convenience of the parties and witnesses and the interests of justice, the court finds that the Southern District of New York is clearly more convenient than the Northern District of Illinois.

### III. *CONCLUSION*

Defendants' motion to transfer this case to the United States District Court for the Southern District of New York, New York, N.Y. is GRANTED. 28 U.S.C. § 1404(a).